UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Lizardo Estrada and
Blanca Rosa Estrada,

Chapter 13
Case No. 06-07011-8W3

Debtors.
_____/

**MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION
BY MACDILL FEDERAL CREDIT UNION TO CONFIRMATION
OF CHAPTER 13 PLAN FILED BY THE DEBTOR(S)**

The debtors in this case purchased a motor vehicle for their personal use less than 910 days prior to filing for bankruptcy relief. In their amended chapter 13 plan, the debtors propose to surrender their vehicle in full satisfaction of the creditor's claim, relying on the line of cases holding that the unnumbered "hanging paragraph" in section 1325(a) of the Bankruptcy Code eliminates section 506 bifurcation in all 910 vehicle cases and allows debtors to surrender a 910 vehicle in full satisfaction of their indebtedness to the creditor. The creditor has objected to confirmation of the plan on the basis that this proposed treatment would infringe on its right under state law to an unsecured claim for any deficiency that may remain after it liquidates the collateral.

The Court sustains the objection, finding that section 1325(a)(5)(C) of the Bankruptcy Code does not implicate section 506. Rather, section 502 comes into play following surrender, and state law determines the creditor's right to an unsecured claim for any balance remaining after liquidation of the vehicle. Thus, section 1325(a)'s "hanging paragraph" does not create a right for a chapter 13 debtor to surrender a 910 vehicle in full satisfaction of the creditor's claim and thereby extinguish the creditor's right, under non-bankruptcy law, to an unsecured deficiency claim.

I.  Facts

Lizardo Estrada and Blanca Rosa Estrada ("Debtors") filed a joint petition under chapter 13 of the Bankruptcy Code on December 9, 2006. Less than 910 days prior to filing their petition, the Debtors purchased a 2004 Dodge Truck ("910 vehicle") for their personal use. MacDill Federal Credit Union ("MacDill") financed the purchase and holds a perfected purchase-money security interest in the vehicle. On December 29, 2006, MacDill filed a proof of claim in the amount of $19,762.07.

In their Chapter 13 Plan (Doc. No. 5), filed on December 10, 2006, the Debtors proposed to surrender the vehicle in full satisfaction of MacDill's secured claim.[1] MacDill filed an Objection to Confirmation (Doc. No. 18) opposing the Debtors' proposed surrender in full satisfaction and arguing that MacDill should be allowed to amend its proof of claim to assert an unsecured claim for any deficiency balance that may remain after liquidating the collateral.

II.  Issue

The issue presented by this contested matter is whether the "hanging paragraph" of section 1325(a) precludes MacDill's assertion of a deficiency claim, when the Debtors' chapter 13 plan proposes to surrender the collateral in full satisfaction of the secured claim.

---

[1] The debtors subsequently amended their plan several times (Doc. Nos. 23, 37 & 47), but none of the amendments changes the provisions of the plan relevant to this issue.

III.   Conclusions of Law[2]

The parties agree that the unnumbered subsection in section 1325(a) ("Hanging Paragraph"), added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), applies in this case. The Hanging Paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(*).

"Paragraph (5)" refers to section 1325(a)(5), which outlines three ways in which a debtor may treat secured claims in a chapter 13 plan: (1) obtain the creditor's acceptance of the plan pursuant to section 1325(a)(5)(A); (2) allow the creditor to retain the lien securing its claim and provide for payment of the secured claim in the plan (commonly known as "cram down") pursuant to section 1325(a)(5)(B); or (3) surrender the collateral to the secured creditor pursuant to section 1325(a)(5)(C).

Thus, the effect of the Hanging Paragraph is to make section 506 unavailable for use in conjunction with the treatment of a secured claim under section 1325(a)(5), which sets out the confirmation standards for treatment of such claims in chapter 13. Accordingly, the Court will review the impact that section 506 has on the three sub-sections of section 1325(a)(5) and the corresponding effect that the unavailability of section 506 has on those sub-sections.

Under the first of these sub-sections, 1325(a)(5)(A), the debtor may provide any treatment for a secured claim so long as the "holder of such claim has accepted the plan . . . ." That is, the debtor will satisfy the confirmation standard set forth in this sub-section by simply obtaining the acceptance of the plan treatment by the creditor holding the secured claim. In this regard, sub-section 1325(a)(5)(A) does not in any way implicate section 506. Accordingly, the Hanging Paragraph, which simply makes section 506 unavailable for purposes of satisfying the confirmation requirement for the treatment of a secured claim, is in no way implicated where the creditor accepts the plan treatment.

The next sub-section in 1325(a)(5) contains the chapter 13 provision that applies when the debtor wishes to keep the collateral and repay the secured claim under terms that are not accepted by the creditor. Specifically, under section 1325(a)(5)(B), a debtor may confirm a chapter 13 plan over the objection of the secured creditor by providing the claimholder with "both a lien securing the claim and a promise of future distributions whose total value . . . is not less than the allowed amount of such claim." *Till v. SCS Credit Corp.*, 541 U.S. 465, 468-69 (2004). The process of obtaining court approval of such a repayment plan over the objection of the secured creditor is called "cram down."

The term "cram down" was first used under the Bankruptcy Act of 1898 to describe the ability of a court to "cram down" a plan over the objection of creditors. *New England Coal & Coke Co. v. Rutland R. Co.*, 143 F.2d 179, 189 n.36 (2d Cir. 1944). Simply stated, the plan will cram down new payment terms over the objection of the secured creditor. These new terms generally involve changing the term of the loan and the interest rate. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 961-65 (1997). So long as the present value of the future stream of payments pays the secured claim in full, the cram down standard is satisfied and the plan will be confirmed over the creditor's objection.

---

[2] The Court has jurisdiction of this matter under 28 U.S.C. sections 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(L).

Chapter 13 debtors often, but not always, use the cram down provision of section 1325(a)(5)(B) in conjunction with section 506. Section 506 sets forth the mechanism by which the secured status of a claim is determined. Under section 506, a claim secured by property of the estate can be bifurcated into secured and unsecured portions. This process is known as a "strip down." *Dewsnup v. Timm*, 502 U.S. 410, 412 (1992) ("strip down" refers to the process under section 506(b) whereby the debtor "strip[s] down a creditor's lien . . . to the value of the collateral, as judicially determined"); *see also Matter of Lindsey*, 823 F.2d 189, 189-90 (7th Cir. 1987) (Posner, J.) (coining the term, "to 'strip down' a lien to the value of the security").

While a chapter 13 plan will often both "cram down" *and* "strip down," it is important that these two concepts be clearly differentiated in order to understand the effect of the hanging paragraph. In this regard, several courts have confused the concepts and use "cram down" to refer to both "cram down" and "strip down." *See, e.g., Matter of Nobleman*, 968 F.2d 483, 485-86, 486 n.5 (5th Cir. 1992) (defining "cram-down" as "reduc[ing] a secured claim to the value of the collateral securing the claim and [discharging] the balance as an unsecured claim").

However, as recognized by the Supreme Court and most circuits, including the Eleventh Circuit, these terms and concepts are not synonymous.[3] *Till*, 541 U.S. at 468-69; *Dewsnup*, 502 U.S. at 412; *Drive Financial Services, L.P. v. Jordan*, 521 F.3d 343, 346-47, 347 n.9 (5th Cir. 2008) (noting that the "muddling of the two provisions[, sections 506 and 1325,] is problematic because they are two distinct provisions of the Bankruptcy Code and they operate independently of each other"); *In re Long*, 519 F.3d 288, 291-92 (6th Cir. 2008); *Capital One Auto Finance v. Osborn*, 515 F.3d 817, 820-21 (8th Cir. 2008); *In re Brawders*, 503 F.3d 856, 869-71 (9th Cir. 2007) (citing section 506 for the authority to "strip liens to the alleged value of the collateral" and section 1325(a)(5) for the requirement that the value of distribution to secured creditors be "not less than the allowed amount of such claim"); *In re Paschen*, 296 F.3d 1203, 1206, 1209 (11th Cir. 2002) (distinguishing bifurcation or "strip down" and "cramdown"); *Ryan v. Homecomings Financial Network*, 253 F.3d 778, 781 n.3 (4th Cir. 2001) ("The term 'strip down' is used when a mortgage is partially secured and partially unsecured . . . ."); *Barbosa v. Soloman*, 235 F.3d 31, 34 (1st Cir. 2000) (referring to the "stripping down" power under section 506); *In re McDonald*, 205 F.3d 606, 614-15 (3d Cir. 2000) (discussing "strip down" of a lien under section 506(d)); *In re Boodrow*, 126 F.3d 43, 60 (2d Cir. 1997) (Shadur, J., dissenting); *Harmon v. United States ex rel. Farmers Home Administration*, 101 F.3d 574 (8th Cir. 1996) (holding that section 506 operates with section 1225 in a chapter 12 case to allow "strip down" of liens); *Wade v. Bradford*, 39 F.3d 1126 (10th Cir. 1994) (addressing the ability of a debtor to "strip down" liens under section 506(d) in chapter 11); *Matter of Lindsey*, 823 F.2d at 189-90 (holding that while "strip down" is available to a debtor under chapter 7, the chapter 13 "cram down" provisions are not).

Pre-BAPCPA, a debtor in chapter 13 could receive both the "cram down" and "strip down" benefits. By enacting the Hanging Paragraph, Congress limited the debtor's ability to "strip down" certain secured claims under section 506, but not its ability to "cram down" the secured claims under section 1325(a)(5)(B). *Drive Financial Services*, 521 F.3d at 347 n.9; *Capital One Auto Finance*, 515 F.3d at 820-21. The Hanging Paragraph removed this double benefit for 910-vehicle debts, eliminating the section 506 "strip down." However, even without utilizing the strip down available under section 506, a debtor may still cram down new repayment terms as to duration and interest rate under section 1325(a)(5)(B). It is only the strip down under section 506 that is now unavailable for 910 vehicles. Thus, Courts agree that by removing the benefit of section 506 from section 1325(a)(5) in 910 cases, debtors who wish to retain their 910 vehicles now must pay the entire amount owed even if the value of the vehicle is less than the full amount due. *Capital One Auto Finance*, 515 F.3d at 820-21.

The next sub-section in 1325(a)(5) contains the chapter 13 provision that applies when the debtor wishes to surrender collateral as a means of dealing with the secured claim. 11 U.S.C. § 1325(a)(5)(C). It is this subsection that has created divergent lines of cases. That is, courts do not agree on the proper way to deal with 910 vehicle debts when debtors opt to surrender their vehicle under this sub-section. The majority

---

[3] To further confuse matters, Westlaw uses the term "cram down" in its KeyCites to identify both the process of "stripping down" the value of a loan and the process of "cramming down" the terms and interest of a loan.

of courts, including two courts with reported decisions in this district, have held that the Hanging Paragraph not only makes section 506 inapplicable in the context of section 1325(a)(5)(B) to forbid strip down of secured claims, but also eliminates the deficiency claim otherwise available when a debtor surrenders collateral under section 1325(a)(5)(C). *See, e.g., In re Vanduyn*, 374 B.R. 896, 902 (Bankr. M.D. Fla. 2007) (Paskay, J.); *In re Williams*, 369 B.R. 680, 682 (Bankr. M.D. Fla. 2007) (Jennemann, J.).

This line of cases is predicated upon the assumption that it is section 506 that gives rise to a secured creditor's deficiency claim. *See In re Durham*, 361 B.R. 206, 210 (Bankr. D. Utah 2006) (stating that a "creditor's right to assert a deficiency claim arises from § 506"); *In re Montoya*, 341 B.R. 41, 44 (Bankr. D. Utah 2006) (stating that "[t]he existence of a claim is determined by non-bankruptcy substantive law, whereas valuation of the claim is determined by § 506."). In other words, under this view, absent section 506, the secured creditor is left with a fully secured claim and loses the right to a deficiency claim in 910 vehicle cases. *Durham*, 361 B.R. at 209. The courts that take this view also cite to the unambiguous language of section 1325(a) and the plain meaning of the statute. *See, e.g., In re Quick*, 371 B.R. 459, 463 (10th Cir. B.A.P. 2007) (holding that "the hanging paragraph unambiguously precludes application of § 506 to the entirety of § 1325(a)(5), and no bifurcation of allowed secured claims may be effected in the exercise of any of a 910 debtor's three options under § 1325(a)(5)."), *rev'd, In re Ballard*, 2008 WL 2080852 (10th Cir. May 19, 2008) (reversing two cases, *In re Quick* and *In re Ballard*, in a consolidated appeal); *In re Pinti*, 363 B.R. 369, 377-378 (Bankr. S.D.N.Y. 2007).

These courts reason that section 506 is essential to the creation of an unsecured deficiency in the context of a surrender and that, therefore, where it is inapplicable as mandated by the hanging paragraph, there is no deficiency claim. *See, e.g., In re Pinti*, 363 B.R. at 379-81. As aptly stated in the concurrence in *In re Long*, "This argument fails because § 506 is not the source for a deficiency claim when collateral is surrendered." 519 F.3d at 300 (Cox, J., concurring). Rather, once collateral is surrendered, it is returned to the secured creditor who is free to foreclose upon its security interest and seek a deficiency under applicable non-bankruptcy law and its loan documents. *See, e.g, In re Particka*, 355 B.R. 616, 621 (Bankr. E.D. Mich. 2006).

This process occurs whether the debtor surrenders the collateral as a means of confirming the plan under section 1325(a)(5) or does so at some other point in the case. A common example of a surrender that routinely takes place in chapter 13 cases outside the context of a plan is a surrender done in compliance with the debtor's duty to perform the statement of intention to surrender under section 521(a)(2)(A) within 30 days after the meeting of creditors. 11 U.S.C. § 521(a)(2)(B). In practice, following surrender, the creditor disposes of the collateral in a commercially reasonable manner. Where the collateral is an automobile this is routinely done through an automobile auction. The proceeds from this disposition are then applied to reduce the debt. The creditor then either files a claim or amends its existing claim for the resulting deficiency still owing after application of the sale proceeds. This claim is deemed allowed in the case unless the debtor or other party in interest objects. Such an objection would be filed pursuant to section 502(b)(1) and would depend on the creditor's contractual entitlements under state law. *See, e.g., Capital One Auto Finance v. Osborn*, 515 F.3d at 822-23; *In re Wright*, 492 F.3d 829, 832-33 (7th Cir. 2007); *In re Rodriguez*, 375 B.R. 535, 543-49 (9th Cir. BAP 2007).

This process is consistent with long-standing Supreme Court precedent, *Butner v. United States*, which holds that absent a federal interest requiring different results, property interests in a bankruptcy proceeding "are created and defined by state law." 440 U.S. 48, 55 (1979). Moreover, it is "generally presume[d] that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.*, 127 S.Ct. 1199, 1206 (2007).

A growing number of courts, including every Circuit Court of Appeals that has dealt with the issue, have held that the Hanging Paragraph does not eliminate the secured creditor's deficiency judgment after the debtor surrenders the collateral. *See, e.g., In re Ballard*, 2008 WL 2080852, *5 (10th Cir. May 19, 2008) (holding that "[w]hether the creditor may bring an unsecured claim to recover a deficiency after sale of the vehicle depends on the underlying contract and state law."); *Capital One Auto Finance v. Osborn*, 515 F.3d at 820-21 (8th Circuit); *In re Long*, 519 F.3d at 288 (6th Circuit); *In re Wright*, 492 F.3d at 832

(7th Circuit, declaring that "it is a mistake to assume . . . that § 506 is the *only* source of authority for a deficiency judgment when the collateral is insufficient"); *see also In re Rodriguez*, 375 B.R. at 548 (holding that while Congress may have intended a different result, if so, that intent "was not expressed clearly enough for us to ignore the effect of section 502"). These decisions hold that a creditor should be allowed to seek available state law remedies, including the right to an unsecured deficiency claim, when the debtor surrenders the collateral. *In re Wright*, 492 F.3d at 832.

While this Court agrees that the Hanging Paragraph makes section 506 of the Bankruptcy Code inapplicable to a 910 claim, it is the Court's view that section 506 has no effect whatsoever on the rights of the claimholder under state law. If the claimholder is entitled to an unsecured deficiency under state law, the Hanging Paragraph's elimination of the section 506 strip down, in the context of a surrender under section 1325(a)(5)(C), does not erase that right. *Capital One Auto Finance*, 515 F.3d at 822.

In summary, this Court agrees with the minority line of cases. The surrender of a 910 vehicle under section 1325(a)(5)(C) does not bring section 506 into play; instead, the claim left after surrender of the 910 vehicle is governed by section 502. Section 502 provides that a claim will be allowed unless it is unenforceable against the debtor "under any agreement or applicable non-bankruptcy law," such as state law. 11 U.S.C. § 502(b)(1). Under Florida law, a creditor is entitled to liquidate the collateral and retain an unsecured claim for any deficiency. FLA. STAT. § 679.615(4)(b) (2007).

IV.     Conclusion

The Debtors in this case proposed through their plan to surrender their 910 vehicle in full satisfaction of the debt. MacDill opposed confirmation, arguing that a deficiency claim arises under state law and should be allowed as an unsecured claim under section 502.

The Court sustains the objection, holding that following the surrender of a 910 vehicle, section 502 provides that state law determines the creditor's right to an unsecured claim for any balance remaining after liquidation of the vehicle. Section 1325(a)'s Hanging Paragraph does not allow a chapter 13 debtor to eliminate a creditor's right under non-bankruptcy law to an unsecured deficiency claim by surrendering a 910 vehicle in full satisfaction of the creditor's claim. Thus, under applicable Florida law, MacDill is entitled to an unsecured deficiency claim.

Accordingly, it is ORDERED AND ADJUDGED that MacDill's Objection to Confirmation is sustained.

DONE AND ORDERED at Tampa, Florida, on **MAY 2 3 2008**.

MICHAEL G. WILLIAMSON
U.S. Bankruptcy Judge

Copies furnished to:

Debtors' Attorney: Thomas A. Nanna, Esq., 8910 N. Dale Mabry Highway, Suite 1, Tampa, FL 33614

Debtors: Lizardo Estrada and Blanca Rosa Estrada, 3823 Harrogate Drive, Valrico, FL 33594

MacDill FCU's Attorney: Brad W. Hissing, Esq., Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A., P.O. Box 800, Tampa, FL 33601

Chapter 13 Trustee: Terry E. Smith, Post Office Box 6099, Sun City Center, FL 33571